# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DAVID NEWBROUGH,

     **Plaintiff,**

vs.

BISHOP HEELAN CATHOLIC
SCHOOLS, THE DIOCESE OF
SIOUX CITY, R. WALKER
NICKLESS, and DAN RYAN,

     **Defendants.**

No. C13-4114

RULING ON MOTIONS FOR
SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* ................................................ 2

*II.*   *PROCEDURAL HISTORY* ..................................... 2

*III.*  *RELEVANT FACTS* ............................................ 3
    *A.*    *The Parties* ............................................... 4
    *B.*    *Background Leading Up to Termination* ............ 5
    *C.*    *Newbrough's Termination* ........................... 6
    *D.*    *Alleged Retaliation* ................................... 7

*IV.*  *LEGAL STANDARD FOR SUMMARY JUDGMENT* ............ 7

*V.*    *DISCUSSION* ................................................ 8
    *A.*    *Individual Liability of Bishop Nickless and Ryan Under Title VII*
        *and ADEA* ............................................. 8
    *B.*    *Age Discrimination* .................................. 10
    *C.*    *Retaliation* ........................................... 17
        *1.*    *Exhaustion of Administrative Remedies* ......... 17
        *2.*    *Prima Facie Case* ............................... 19
    *D.*    *Discrimination Based on Religion* ................... 20

    *1.*   *Title VII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    *2.*   *ICRA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*VII.*   *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## *I. INTRODUCTION*

This matter comes before the Court on the Motion for Summary Judgment (docket number 17) filed by the Defendants on September 16, 2014, the Resistance (docket number 25) filed by the Plaintiff on October 17, and the Reply (docket number 31) filed by Defendants on October 27.

Also before the Court is the Motion for Partial Summary Judgment (docket number 38) filed by the Plaintiff on January 20, 2015, and the Resistance (docket number 43) filed by the Defendants on January 27, 2015. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## *II. PROCEDURAL HISTORY*

On December 5, 2013, Plaintiff David Newbrough filed a complaint seeking judgment against Defendants Bishop Heelan Catholic Schools ("BHCS"), The Diocese of Sioux City ("The Diocese"), R. Walker Nickless, and Dan Ryan. Newbrough claims he was terminated from his employment as Chief Financial Officer of BHCS as a result of religious and age discrimination. Newbrough also claims that after he filed a complaint with the Iowa Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC"), Defendants retaliated against him by terminating him from a volunteer position as official scorekeeper at Heelan basketball games. All four Defendants filed separate answers on February 7, 2014, denying the material allegations and asserting certain affirmative defenses.

On March 11, 2014, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Also at that time, the case was referred to a United States magistrate judge for the conduct of all further proceedings and the entry of judgment, in accordance with 28 U.S.C. § 636(c) and the consent of the parties. The case was assigned to Magistrate Judge Leonard T. Strand. Judge Strand entered an order setting the matter for trial on April 6, 2015, with a final pretrial conference on March 24, 2015.

On September 16, 2014, Defendants timely filed the instant motion for summary judgment. On October 17, Plaintiff filed a resistance to Defendants' motion for summary judgment and, in the same document, filed a motion for partial summary judgment. This procedure failed to comply with Local Rule 7.e ("A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a new motion."). Accordingly, the Court ordered Plaintiff to re-file his motion in compliance with the rules. On January 20, 2015, Plaintiff filed the instant motion for partial summary judgment.

Judge Strand set the parties' respective motions for summary judgment for hearing on November 20. The hearing was later continued to December 22. On December 19, however, Judge Strand found he was required to recuse himself. The case was then assigned to me.

### III. RELEVANT FACTS

In support of their motion for summary judgment and in compliance with Local Rule 56.a.3, Defendants filed a statement of material facts. The statement sets forth those facts as to which Defendants contend there is no genuine issue. The statements are supported by citations to the record, as required by FEDERAL RULE OF CIVIL PROCEDURE 56(c)(1)(A). Initially, Plaintiff did *not* respond to Defendants' statement of material facts, as required by Local Rule 56.b.2. Instead, Plaintiff simply filed his own statement of material facts in support of his motion for summary judgment. Accordingly, the Court

gave Plaintiff an opportunity to file appropriate responses. Plaintiff responded to Defendants' statement of material facts on January 20, 2015.

## A. *The Parties*

Plaintiff David Newbrough was an employee of Bishop Heelan Catholic Schools from August 11, 2003, through January 25, 2013. Newbrough was the Director of Finance, or "CFO," for Bishop Heelan Catholic Schools.

The Diocese of Sioux City is a religious corporation, association, or society. It is comprised of 24 counties in northwest Iowa, with 112 parishes. Defendant R. Walter Nickless was installed as Bishop of The Diocese on January 20, 2006, and currently holds that position.

Defendant Bishop Heelan Catholic Schools ("BHCS") is a religious corporation and religious educational institution. It is one of 16 school systems within The Diocese. There are approximately 1,600 children enrolled in BHCS, in grades pre-K through 12, at five locations throughout Sioux City. BHCS has a Board of Education of 9 to 11 unpaid members. The BHCS Board of Education has primary financial responsibility for BHCS, reviews the school system's budget, and approves the budget. BHCS also has a finance committee comprised of individuals with finance expertise, which advises the Board on financial matters, including recommendations to the Board for a specific action. BHCS has a president who is the lead administrator of the BHCS school system, and is responsible for monitoring and overseeing the budget, making budget recommendations to the Board of Education, working with the Board's committees, overseeing human resource issues, and other administrative duties. The President of BHCS has the authority to fire employees under his or her supervision, including persons in Newbrough's position of Director of Finance.

Defendant Dan Ryan has been the Superintendent of Schools for The Diocese since June 2009, and is in that position at the present time. As the Superintendent of Schools

for The Diocese, Ryan is the lead person for the Diocesan Office of Education, and works with all of the 16 school systems within The Diocese.

## B. Background Leading Up to Termination

On October 12, 2012, the BHCS Board of Education received the annual audit report for fiscal year 2011-2012.[1] The audit report showed an operations loss of $149,313 for fiscal year 2011-2012.[2] At a finance committee meeting on November 15, 2012, Timm Funk, the Board of Education Treasurer, recommended that Superintendent Ryan implement a budget reduction plan over the next two budget years, 2012-2013 and 2013-2014, to make up the operating loss from fiscal year 2011-2012. On November 19, 2012, at a BHCS Board of Education meeting, Funk presented the Treasurer's Report and recommendation to implement a budget reduction plan to address the operating loss from fiscal year 2011-2012. The Board accepted the Treasurer's recommendation and passed the following motion:

> Whereas, the President shall take necessary steps to recover []
> approximately 50% of the FY 2012 deficit by the end of
> 6-30-13. Finance committee has determined this to be
> approximately $75,000. The other $75,000 would need to be
> recovered in FY 2014. Whereas, the President shall take
> necessary steps to address the forecasted deficit for FY 2014
> and report to the Board with those actions or recommendations
> at the January 2013 meeting.

---

[1] The fiscal year for the 2011-2012 audit report ran from July 1, 2011 to June 30, 2012.

[2] *See* Defendant's Appendix at 233; Defendant's Exhibit B at 4. Newbrough denies the existence of an operating loss. *See* Plaintiff's Response to Defendant's [(*sic*)] Statement of Additional Material Facts (docket number 39) at 3, ¶ 28. Newbrough asserts that the "shortfall" was "manufactured" by not collecting assessed contributions from a particular church in the Diocese. *Id.*

Defendants' Statement of Material Facts in Support of Motion for Summary Judgment (docket number 17-1) at 7-8, ¶ 42; Exhibit A, Defendant's Appendix (docket number 17-3) at 229.

In order to meet the Board's directive, Ryan decided to restructure BHCS's administrative office. Specifically, Ryan proposed the elimination of two positions in the administrative office, the Director of Finance and the Director of Marketing. Ryan further proposed that a new controller position be created to replace the Director of Finance position. The new controller position would have a significantly lower salary compared to the Director of Finance position, but would also have fewer duties; *i.e.*, running the day-to-day financial activities of BHCS, while Ryan would take over the duties of overseeing and monitoring BHCS's long-term financial needs.[3] Ryan also intended to re-allocate the duties of the Director of Marketing position to the Director of Advancement and Director of Annual Giving positions. Prior to implementing the restructuring of the administrative office, Ryan explained his plan to both Bishop Nickless and the Board of Education officers.

### C. *Newbrough's Termination*

On January 11, 2013, Newbrough was informed by Ryan that the position of Director of Finance was being eliminated and Newbrough was being terminated. The position was downgraded to that of Financial Controller, to perform some of the same work previously assigned to Newbrough. Katie Firestine, a 30-year-old Catholic, was

---

[3] *See* Defendants' Statement of Material Facts in Support of Motion for Summary Judgment (docket number 17-1) at 9, ¶ 52. Newbrough denies ¶ 52, without any citation to the record, and asserts that the shortfall was manufactured because Ryan decided he wanted to terminate him. *See* Plaintiff's Response to Defendant's [(*sic*)] Statement of Material Facts in Support of Motion for Summary Judgment (docket number 39) at 5, ¶ 52, *see also* ¶ 43.

hired by BHCS to fill the new position. On January 11, 2013, Newbrough was 50 years old and not Catholic. Newbrough continued to work through January 25.

On the same date, Angie Heller, the Director of Marketing, was also informed that her position was being eliminated and she was being terminated. At the time of her termination, Heller was 45 years old and Catholic.

### D. Alleged Retaliation

Newbrough was the BHCS varsity boys basketball official scorekeeper for multiple seasons, including the 2012-2013 season. The official scorekeeper for varsity boys basketball games is a volunteer position. Newbrough did not receive any compensation for being the official scorekeeper, and it was not part of his employment or duties as the Director of Finance at BHCS. Newbrough was terminated as the official scorekeeper on November 13, 2013, prior to the start of the 2013-2014 boys basketball season. Newbrough filed a complaint with the Iowa Civil Rights Commission ("ICRC") in May 2013. Newbrough alleges that his termination as the varsity boys basketball official scorekeeper was in retaliation for his filing a complaint with the ICRC.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes*

*Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

In his complaint, Newbrough alleges discrimination based on religion in violation of Title VII and the ICRA (Counts I and II), age discrimination in violation of the ADEA and the ICRA (Counts III and IV), and retaliation in violation of Title VII and the ADEA (Count V). For a variety of reasons, Defendants ask that all of Newbrough's claims be summarily dismissed. Newbrough also filed a motion for partial summary judgment, arguing that he is entitled to summary judgment because Defendants are liable for religious discrimination, age discrimination, and retaliation as a matter of law.[4]

### A. Individual Liability of Bishop Nickless and Ryan Under Title VII and ADEA

Defendants Bishop Nickless and Ryan argue that as a matter of law, they cannot be held individually liable under Newbrough's Title VII discrimination claims. They do not

---

[4] Newbrough apparently termed his motion a "partial" motion for summary judgment, as the amount of damages remains in dispute.

address whether the same is true under the ADEA. Newbrough does not address the issue of individual liability under either Title VII or the ADEA.

The Eighth Circuit Court of Appeals has held that claims against individual defendants such as Bishop Nickless and Ryan are not allowed in Title VII cases. *See Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998) (The Eighth Circuit has "'squarely held that supervisors may not be held individually liable under Title VII.' *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997)."); *see also McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 860 n.2 (8th Cir. 2009) (same); *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000) (same).

While the Eighth Circuit has not explicitly held in a published opinion that individual liability is unavailable under the ADEA, other circuit courts of appeals have determined that claims against individual defendants are not allowed in ADEA cases. *See Brundo v. Stillmunks*, 367 Fed. Appx. 734 (8th Circuit 2010) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) for the proposition that individuals are not subject to suit under the ADEA); *see also Horwitz v. Board of Education of Avoca School District No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) ("[W]e have suggested that there is no individual liability under the ADEA."); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 686 (5th Cir. 2001) ("[T]he ADEA 'provides no basis for individual liability for supervisory employees.' *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996)."); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (finding no individual liability under the ADEA); *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587-588 (9th Cir. 1993) (same). Similarly, district courts within the Eighth Circuit have also held that individual liability under the ADEA is impermissible. *See Onyiah v. St. Cloud State University*, 655 F. Supp. 2d 948, 962 (D. Minn. 2009) (finding that Title VII and the ADEA are not applicable to individuals); *Fikse v. State of Iowa Third Judicial District*

9

*Department of Correctional Services*, 633 F. Supp. 2d 682, 692-693 (N.D. Iowa 2009) (no individual liability under the ADEA); *Smith v. Bankers Life and Cas. Co.*, 519 F. Supp. 2d 964, 967 (S.D. Iowa 2007) (same); *Kelleher v. Aerospace Community Credit Union*, 927 F. Supp. 361, 362 (E.D. Mo. 1996) (same).

Accordingly, the Court finds that Bishop Nickless and Ryan are entitled to summary judgment and dismissal of Newbrough's Title VII, ADEA, and retaliation (Title VII and ADEA) claims, as they cannot be held individually liable on such claims. However, Bishop Nickless and Ryan may still be held individually liable on Plaintiff's claims for age and religious discrimination under the ICRA. *Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999) ("[W]e hold that a supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act.").

### B. Age Discrimination

The ADEA makes it unlawful for an employer to discriminate against an individual because of the individual's age. 29 U.S.C. § 623(a)(1). Similarly, the ICRA makes it unlawful to discriminate against any employee because of the employee's age. Iowa Code § 216.6(1)(a). The Court generally applies the same analysis to age discrimination claims under the ADEA and the ICRA, with one exception: the standard of proof required. *Tusing v. Des Moines Independent Comm. School Dist.*, 639 F.3d 507, 514 (8th Cir. 2011). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009), the Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." In an action brought pursuant to the ICRA, however, the plaintiff need only prove that age was "a motivating factor" in the employer's decision. *Newberry v. Burlington Basket Co.*, 622 F.3d 979, 981-83 (8th Cir. 2010) (citing *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 11-14 (Iowa 2009)).

A claim of age discrimination may be established either through direct evidence of discrimination or through circumstantial evidence. *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876 (8th Cir. 2008) (citing *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007)); *see also Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008) ("To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence."). If there is no direct evidence of age discrimination, then the plaintiff's claims are analyzed under the familiar burden-shifting scheme of *McDonnell Douglas*.[5] At the first step of the analysis in applying the *McDonnell Douglas* test, the plaintiff has the burden of establishing a *prima facie* case of age discrimination. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1083 (8th Cir. 2013). A *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff and shifts the burden to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Id.* If the employer meets this burden, then the presumption of discrimination dissolves and the burden returns to the plaintiff to demonstrate that the proffered reason is a mere pretext for age discrimination. *Id.*

Because Newbrough has not provided any direct evidence of age discrimination against him, the Court analyzes his claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). In order to establish a *prima facie* case of age discrimination, Newbrough must show he (1) was at least 40 years

---

[5] In *Tusing*, the Eighth Circuit Court of Appeals acknowledged that the Supreme Court in *Gross* noted that it had not "definitively decided whether the evidentiary framework of *McDonnell Douglas* is appropriate in the ADEA context." 639 F.3d at 515 n.3. Nonetheless, the Eighth Circuit concluded that the *McDonnell Douglas* analysis is likely still an appropriate way to analyze ADEA "pretext" claims, because *McDonnell Douglas* only shifts the burden of *production* while the Court in *Gross* stated that the plaintiff always retains the burden of *persuasion*. *Id.*

old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (quoting *Morgan v. AG Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir. 2007)).

Defendants argue that "[m]odification of the fourth element is necessary in cases involving reorganization or job restructuring," requiring the plaintiff to produce additional evidence showing age was a factor in the adverse employment action.[6] Newbrough's response to Defendants' assertion that the more exacting standards of a reorganization or reduction-in-force ("RIF") case should be applied to the fourth element of the *prima facie* case in this matter is unclear to the Court. In his brief, Newbrough attempts to distinguish the present case from *Roberts v. USCC Payroll Corp.*, 635 F. Supp. 2d 948 (N.D. Iowa 2009), a case Defendants did not cite for the proposition that this matter should be analyzed as a RIF case. In fact, *Roberts* is not even a RIF case. Newbrough states that "[i]n *Roberts*, . . . the duties of the terminated employee were absorbed by other personnel then working for the employer. The Defendants concede that BHCS hired a younger individual to perform Mr. Newbrough's duties within four months after Newbrough's termination."[7] Newbrough's argument has no bearing on whether this case should be analyzed as a RIF case. Newbrough does not further address the issue of whether the fourth element of the *prima facie* case requires additional evidence showing that age was

---

[6] Defendants' Brief in Support of Motion for Summary Judgment (docket number 17-5) at 46-47.

[7] Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 27.

a factor in his termination because his termination was the result of a reorganization or RIF.

*Regal v. K-Mart Corp.*, 190 F.3d 876 (8th Cir. 1999), is an age discrimination case involving two employees who were terminated from working at a K-Mart in Charles City, Iowa, due to a reduction-in-force. *Id.* at 878. Specifically, in May 1995, the Charles City K-Mart was "exceeding its salary budget by about $10,000 . . . and the store was showing operation losses of $44,000." *Id.* It was determined that the elimination of two full-time employees would produce the necessary reduction in salary expenditures. *Id.* The Eighth Circuit considered the two plaintiffs' terminations to be the result of a reduction-in-force, and analyzed their age discrimination claims in the context of a RIF case. *Id.* at 879.

Here, the facts are similar to those in *Regal.* The BHCS Board of Education received the annual audit report for fiscal year 2011-2012, showing an operations loss of $149,313. At a finance committee meeting, the Board of Education Treasurer recommended that Superintendent Ryan implement a budget reduction plan over the next two budget years, 2012-2013 and 2013-2014, to make up the operating loss from fiscal year 2011-2012. Shortly thereafter, at a BHCS Board of Education meeting, the Treasurer recommended to the Board a budget reduction plan to address the operating loss from fiscal year 2011-2012. The Board accepted the Treasurer's recommendation and passed a motion directing the President to "take necessary steps" to recover half of the deficit by 6/30/13, with the remaining half recovered in FY 2014. In order to meet the Board's directive, Ryan decided to restructure BHCS' administrative office. Specifically, Ryan proposed the elimination of two positions in the administrative office, the Director of Finance and Director of Marketing. In implementing this plan, both Newbrough's (Director of Finance) and Angie Heller's (Director of Marketing) positions were eliminated, and their employment was terminated. The Court concludes that, like *Regal*,

Newbrough's termination was the result of a reorganization/RIF. Therefore, like *Regal*, this case should be analyzed in the RIF context.

Because this case involves a discharge in the context of a reorganization/RIF, a modification of the fourth element of the *prima facie* case is necessary. Thus, in order to establish a *prima facie* case of age discrimination in the RIF context, Newbrough must show he "(1) was within the protected class (over 40); (2) his performance met his employer's legitimate expectations; (3) he was discharged; and (4) there was an additional showing of age as a factor in the discharge decision." *Spencer v. Stuart Hall Co., Inc.*, 173 F.3d 1124, 1128 (8th Cir. 1999). In a non-RIF age discrimination case, the plaintiff may satisfy the fourth prong of the *prima facie* case by showing that an individual below the age of forty was hired to replace him or her. In a RIF age discrimination case, however, "'the fact that the plaintiff's duties were assumed by a younger person is not enough in itself to establish a prima facie case.'" *Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 890 (8th Cir. 1998) (quoting *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir. 1995)); *see also Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1243 (8th Cir. 1991) (In a RIF age discrimination case "the fact that the plaintiff's duties were assumed by a younger person was in itself insufficient to establish a prima facie case. Rather, to establish a prima facie case, the plaintiff must come forward with additional evidence to establish that age was a factor in his termination."). In *Johnson*, the Eighth Circuit explained that "additional evidence was necessary otherwise every plaintiff in a protected age group would be allowed a trial simply because he was discharged during a reduction in force." 931 F.2d at 1243.

Here, Newbrough simply contends that he was replaced by a younger individual, and offers no additional evidence that age was a factor in his termination. Specifically, Newbrough asserts that he was 50 years old at the time of his termination, his job performance met Defendants' legitimate expectations, and he was replaced by a younger

14

worker. Newbrough concludes that "Defendants in this case concede that BHCS hired a younger individual to perform Mr. Newbrough's duties within four months after Newbrough's termination. Therefore, Newbrough has made a prima facie case that he was terminated based upon his age."[8]

Because Newbrough provides no "additional evidence to establish that age was a factor in his termination," other than a younger individual was hired to replace him, the Court finds that Newbrough failed to establish the fourth element of the *prima facie* case for age discrimination in a RIF case. *Johnson*, 931 F.2d at 1243; *see also Fast*, 149 F.3d at 890 ("'[T]he fact that the plaintiff's duties were assumed by a younger person is not enough in itself to establish a prima facie case'" in a RIF age discrimination case*) (quoting *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir. 1995)).

Indeed, other than being replaced by a younger individual, Newbrough offers no evidence that age was a factor in his termination. Newbrough argues that Defendants' proffered nondiscriminatory reason for his termination — a reorganization of his department and elimination of his position for financial reasons — was unnecessary because BHCS could have obtained the financial support owed by a particular church in the Diocese to avert the budget crisis. The Court finds two flaws in Newbrough's argument. First, whether BHCS could have obtained funds from a church within the Diocese to alleviate its financial difficulties is irrelevant to whether age was a factor in his termination.[9] Second, Newbrough does not dispute that the BHCS Board of Education

---

[8] Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 27.

[9] Newbrough, without further elaboration, offers the following statement in his brief: "BHCS hired a younger person to take over Newbrough's position in order to pay the individual less so that it did not have to collect revenues earmarked for BHCS."

(continued...)

passed a motion requiring Superintendent Ryan to recover $75,000, or approximately 50% of fiscal year 2012's deficit by June 30, 2013. In order to accomplish the Board's directive, Defendants chose to reorganize Newbrough's department and eliminate two positions, including Newbrough's position as Director of Finance. Newbrough's attack on Defendants' business decision to implement a reorganization/RIF is not evidence of age discrimination. "A company's exercise of its business judgment 'is not a proper subject for judicial oversight.'" *Regal*, 190 F.3d at 880 (quotation omitted). Furthermore, "'the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgment made by employers, except to the extent that those judgments involve intentional discrimination.'" *Id.* (quoting *Herrero v. St. Louis University Hospital*, 109 F.3d 481, 485 (8th Cir. 1997)). Moreover, even though Newbrough challenges the financial need for a RIF, "when a company exercises its business judgment in deciding to reduce its work

---

[9](...continued)
Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 29. The Court finds this statement to be of no help to Newbrough in his age discrimination claim for two reasons. First, the younger individual, who received less pay, did not replace Newbrough as the Director of Finance. Instead, she was hired for a newly-created position of controller, with fewer duties than the eliminated Director of Finance position. *See* Defendants' Statement of Material Facts in Support of Motion for Summary Judgment (docket number 17-1) at 9, ¶ 52. While Newbrough denies this fact, he offers no evidence to dispute that a new position of controller was created with fewer duties after his position was eliminated. *See* Plaintiff's Response to Defendant's [(*sic*)] Statement of Material Facts in Support of Motion for Summary Judgment (docket number 39) at 5, ¶ 52. Second, and more significantly, the Eighth Circuit has held that "employment decisions motivated by factors other than age (such as salary, seniority, or retirement eligibility), even when such factors correlate with age, do not constitute age discrimination." *E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 952 (8th Cir. 1999) (citations omitted). Accordingly, Newbrough's statement has no bearing on the fourth element of his *prima facie* case.

force, 'it need not provide evidence of financial distress to make it a "legitimate" RIF.'" *Id*. (quoting *Hardin v. Hussmann Corp.*, 45 F.3d 262, 265 (8th Cir. 1995)). The Court concludes that Newbrough's age discrimination claim fails because he is unable to make a showing that age was a factor in his discharge, as required for the fourth element of his *prima facie* case. *See Spencer*, 173 F.3d at 1128. Therefore, because Newbrough did not establish the fourth element of his *prima facie* case, he is not entitled to recover from Defendants on his claim of age discrimination under the ADEA or the ICRA.

## C. Retaliation

Newbrough argues that Defendants retaliated against him in violation of Title VII and the ADEA. In his brief, Newbrough asserts that "[a]pproximately 10 months after BHCS terminated [him] as finance officer, BHCS informed [him] that he would not be the basketball scorekeeper at BHCS basketball games. This termination of approximately November of 2013, occurred after [he] filed his charge with the EEOC."[10] Newbrough seeks only emotional stress damages for his retaliation claim. Defendants assert that they are entitled to summary judgment on Newbrough's retaliation claim because he failed to exhaust his administrative remedies for the claim, and he failed to establish a *prima facie* case of retaliation.

### 1. Exhaustion of Administrative Remedies

In Title VII cases, before commencing an action in court alleging unlawful discrimination, a plaintiff must file a timely charge with the EEOC or a state or local agency. 42 U.S.C. § 2000e-5(e)(1). Similarly, in ADEA cases, a plaintiff must file a timely charge with the EEOC before commencing an action in court alleging unlawful discrimination. 29 U.S.C. § 626(d)(1)(A). The language in both statutes requires charges

---

[10] Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 29.

to be filed with the EEOC within 180 days "after the alleged unlawful practice occurred." 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(A) (ADEA). In *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012), the Eighth Circuit explained that:

> The object of the exhaustion requirement is "the alleged unlawful employment practice." The Supreme Court in [*Nat'l R.R. Passenger Corp. v.*] *Morgan*[, 536 U.S. 101 (2002)] explained that the term "practice" in this phrase does not connote "an ongoing violation that can endure or recur over a period of time." 536 U.S. at 110-11, 122 S. Ct. 2061. Rather, other subsections of Title VII define the sorts of actions that qualify as "unlawful employment practices," and include among such practices "numerous discrete acts." *Id.* at 111, 122 S. Ct. 2061. The Court reasoned that the term "practice" does not convert "related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114, 122 S. Ct. 2061. The Tenth Circuit explained that *Morgan* thus "abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

*Id.* at 851. The Eighth Circuit rejected the contention that retaliation claims arising from a charge filed with the EEOC are excepted from the exhaustion requirement. *Id.* A plaintiff must file a charge with respect to each unlawful employment practice, including an alleged retaliatory action. *Id.*

Here, Newbrough's administrative complaint was confined to allegations of religious and age discrimination. Newbrough did not allege retaliation until he filed his

complaint in federal district court.[11] It makes no difference that Newbrough was relieved of his volunteer score keeping duties six months after he filed his religious and age discrimination complaint with the EEOC. Newbrough's "termination" from being a volunteer scorekeeper was a separate discrete act from his termination from employment giving rise to his religious and age discrimination complaint, requiring a separate filing of retaliation with the EEOC. *Richter*, 686 F.3d at 851. Because Newbrough did not file a retaliation charge with the EEOC, he failed to exhaust his administrative remedies, and his retaliation claim is dismissed. *See Id*.

### 2. Prima Facie Case

In the alternative, even if Newbrough had exhausted his administrative remedies, he failed to establish a *prima facie* case of retaliation. Without direct evidence of a retaliatory motive, the Court analyzes retaliation claims (whether under Title VII, the ADA, or the ADEA) under the burden-shifting framework of *McDonnell Douglas*. *Stewart v. Independent School Dist. No. 196*, 471 F.3d 1034, 1042-43 (8th Cir. 2007). Using the analytical construct of *McDonnell Douglas*, the initial burden is on the plaintiff to establish a *prima facie* case of retaliation. *Id.* at 1043. The plaintiff in a retaliation action must produce evidence "(1) that he or she engaged in statutorily protected activities; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id.* (quoting *Greene v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)).

Here, Newbrough is unable to show that an adverse employment action was taken against him. An adverse employment action is "exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *Williams v. City*

---

[11] *See* Defendants' Appendix to Motion for Summary Judgment (docket number 17-2) at 84-86 (Newbrough's deposition, where he admits to not filing a retaliation claim in his administrative complaint).

*of Kansas City, Mo.*, 223 F.3d 749, 753 (8th Cir. 2000) (citation omitted). In being relieved of his duties as an unpaid volunteer scorekeeper, Newbrough had no change in salary, benefits, or employment responsibilities. In fact, as an unpaid volunteer, Newbrough did not have an employment relationship with Defendants. *See Jacob-Mua v. Veneman*, 289 F.3d 517, 520-521 (8th Cir. 2002) (providing that an unpaid volunteer is not an employee for purposes of a claim for retaliation). Moreover, Newbrough's claim of emotional stress due to the embarrassment of not being the basketball scorekeeper does not amount to a "material employment disadvantage." *See Recio v. Creighton University*, 521 F.3d 934, 940-941 (8th Cir. 2008) (providing that in the retaliation context, feelings of being ostracized are not materially adverse); *Weger v. City of Ladue*, 500 F.3d 710, 727-728 (8th Cir. 2007) (same). The Court concludes that Newbrough's retaliation claim fails because he is unable to make a showing that an adverse employment action was taken against him, as required for the second element of his *prima facie* case. *See Stewart*, 471 F.3d at 1043. Therefore, because Newbrough did not establish the second element of his *prima facie* case, he is not entitled to recover from Defendants on his claim of retaliation.

### D. Discrimination Based on Religion

#### 1. Title VII

Newbrough alleges that Defendants terminated him from employment because he is not Catholic, in violation of Title VII's prohibition of discrimination based on religion. The statute provides in pertinent part:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]

42 U.S.C. § 2000e-2(a)(1). Defendants argue that Section 702 of Title VII, codified at 42 U.S.C. § 2000e-1(a), provides an exemption to religious organizations discriminating

on religious grounds in employment. When Title VII was enacted, Section 702 "exempted only the religious activities of religious employers from the statutory proscription against religious discrimination in employment." *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 334 n.9 (1987). In 1972, Congress amended Section 702 and extended the exemption to all activities of a religious organization. *Id.; see also Lown v. Salvation Army, Inc.,* 393 F. Supp. 2d 223, 247 (S.D.N.Y. 2005) (The revised statutory language "applied Section 702's exemption to any activities of religious organizations, regardless of whether those activities are religious or secular in nature."). The amended version of Section 702 provides in pertinent part:

> This subchapter shall not apply to an employer with respect . . . to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a).

Newbrough contends that the exemption is not applicable in his case. Specifically, Newbrough states "[a]ccounting and financial reporting are not distinct to Catholics."[12] Newbrough offers no further argument on this issue and cites no case law to support his position.

In *Amos,* the United States Supreme Court addressed the application of Section 702's "religious organization" exemption when a religious organization discriminated against employees who performed secular functions. Specifically, the lead plaintiff in *Amos* worked for 16 years as a building engineer at a nonprofit facility which was open

---

[12] Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 6.

to the public, and run by affiliates of the Church of Jesus Christ of Latter-day Saints. 483 U.S. at 330; *see also Lown*, 393 F. Supp. 2d at 247 (providing review and discussion of the *Amos* case). The lead plaintiff was discharged from his position because he failed to "qualify for a temple recommend, that is, a certificate that he is a member of the Church and eligible to attend its temples." *Amos*, 483 U.S. at 330. The defendants in the case moved to dismiss plaintiffs' religious discrimination claims on the ground that the "religious organization" exemption shielded them from liability. *Id.* at 331. The plaintiffs argued that "if construed to allow religious employers to discriminate on religious grounds in hiring for nonreligious jobs, § [2000e-1(a)] violates the Establishment Clause." *Id.*

Applying the three-part *Lemon* test,[13] the Supreme Court determined in *Amos* that: (1) Section 702 has a permissible secular purpose that does not violate the Establishment Clause; (2) any advancement of religion achieved by the nonprofit, public facility is attributable to the Church, not the government; and (3) the statutory exemption does not impermissibly entangle church and state. *Amos*, 483 U.S. at 335-339. The Supreme Court concluded that:

> Congress acted with legitimate purpose in expanding the § [2000e-1(a)] exemption to cover all activities of religious employers. . . . [A]s applied to the nonprofit activities of religious employers, § [2000e-1(a)] is rationally related to the legitimate purpose of alleviating significant governmental interference with the ability of religious organizations to define and carry out their religious missions.

---

[13] *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (The three-part test provides that for a statute to withstand scrutiny under the Establishment Clause of the First Amendment, "the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen*, 392 U.S. 236, 243, 88 S. Ct. 1923, 1926, 20 L. Ed. 2d 1060 (1968); finally, the statute must not foster 'an excessive entanglement with religion.' *Walz, supra*, at 674, 90 S. Ct., at 1414.").

*Amos*, 483 U.S. at 339; *see also Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) ("The decision to employ individuals "of a particular religion" under § 2000e-1(a) . . . has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer."); *Saeemodarae v. Mercy Health Services*, 456 F. Supp. 2d 1021, 1035 (N.D. Iowa 2006) ("[I]t is not necessary that the activities of the employer be "religious" activities for the exemption to apply."); *Lown*, 393 F. Supp. 2nd at 247 (Providing that § 2000e-1(a)'s exemption applies to "any activities of religious organizations, regardless of whether those activities are religious or secular in nature.").

In *Saeemodarae*, a case similar to the case presently before the Court, the plaintiff, a practicing Wiccan, asserted a claim for religious discrimination under Title VII, after her termination from a medical center with ties to the Roman Catholic church. 456 F. Supp. 2d at 1023. The defendant moved for summary judgment on the ground that it was exempt from the plaintiff's discrimination claim under § 2000e-1(a)'s "religious organization" exemption. *Id*. In construing the exemption found in § 2000e-1(a), the district court noted that:

> [T]he Third Circuit Court of Appeals has explained, "The statute exempts religious entities . . . from Title VII's nondiscrimination mandate to the extent that an employment decision is based on an individual's religious preferences." *Petruska* [v. *Gannon University*], 462 F.3d [294,] 303-04 [(3d Cir. 2006)]. More specifically, "the decision to employ individuals 'of a particular religion' under § 2000e-1(a) . . . has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Hall*, 215 F.3d at 624 (citing as examples *Little v. Wuerl*, 929 F.2d 944, 952 (3d Cir. 1991), in which the court concluded that the Title VII exemption included the decision of a parochial school to terminate a tenured Protestant teacher who had failed to validate her

second marriage by first seeking an annulment of her previous marriage through the proper canonical procedures of the Catholic church, and *Killinger v. Samford Univ.*, 113 F.3d 196, 198 (11th Cir. 1997), in which the court concluded that the Title VII exemption included the decision of a Baptist university to remove a Baptist faculty member from his teaching position because his religious beliefs differed from those of the dean).

*Id.* at 1039. The Court determined that the conduct which the plaintiff claimed was religious discrimination — the defendant discriminating against, and ultimately terminating her because of her Wiccan religious beliefs and activities — falls "squarely within the scope of the exemption." *Id.* at 1040. The Court further found no merit in the plaintiff's belief that the exemption was inapplicable because her work duties were "secular." *Saeemodarae*, 456 F. Supp. 2d at 1040. The court explained that:

> Just as there is no requirement that the employer be engaged in "religious" activities to invoke the exemption, *see Amos*, 483 U.S. at 332 n.9, 107 S. Ct. 2862 (the 19[72] amendments extended the "religious organization" exemption to all activities of "religious organizations," not just religious activities), there is no requirement that the employee be engaged in "religious" duties for the exemption to apply to the employee's claims. *See Siegel [v. Truett-McConnell College, Inc.]*, 13 F. Supp. 2d [1335], 1339 [(N.D. Ga. 1994)] (relying on *Amos* to hold that an employee's "secular" duties do not make the "religious organization" exemption inapplicable). Similarly [the defendant] is not required to demonstrate any "causal relationship" between a specific religious policy and [the plaintiff's] termination from her "secular" position . . . to invoke the exemption. *Killinger*, 113 F.3d at 199-200 (the institution is not required to demonstrate any "causal relationship" between a specific religious policy and the employee's termination from her "secular" position to invoke the exemption).

*Id.*

Here, Newbrough alleges that he was terminated from his position as Director of Finance at BHCS because he was Lutheran, and not Catholic. Newbrough maintains that his termination was the result of a policy instituted by Bishop Nickless and Superintendent Ryan to make BHCS "more Catholic." According to Newbrough, examples of this policy included requiring all staff to become "catechist certified" and making being Catholic a focus when hiring new employees. In summary, Newbrough asserts that "the evidence shows that [he] was terminated pursuant to a long-standing BHCS policy that favored Catholic employees over non-Catholic employees, and that required that employment decisions be made in conformity with that favoritism."[14]

The Court finds that the conduct alleged by Newbrough falls within the scope of the exemption. Such conduct — basing employment decisions on the employer's religious preferences — is contemplated by the exemption. *See Hall*, 215 F.3d at 624 ("The decision to employ individuals 'of a particular religion' under § 2000e-1(a) . . . has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer."). Moreover, Newbrough's contention that the exemption is not applicable because "[a]ccounting and financial reporting are not distinct to Catholics," is without merit.[15] *See Saeemodarae*, 456 F.3d at 1040 ("Just as there is no requirement that the employer be engaged in 'religious' activities to invoke the exemption, . . . there is no requirement that the employee be engaged in "religious" duties for the exemption to apply to the employee's claims.") (citations omitted). Therefore, the Court finds, as a matter of law, Defendants are exempt pursuant to § 2000e-1(a) to

---

[14] Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 5.

[15] *Id.* at 6.

Newbrough's Title VII religious discrimination claim. Accordingly, Defendants are entitled to summary judgment on that claim.

### 2. *ICRA*

Similar to Title VII's prohibition of discrimination based on religion, the ICRA also prohibits religious based discrimination. Iowa Code section 216.6(1)(a) provides in pertinent part:

> 1. It shall be an unfair discriminatory practice for any:
>    a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of . . . religion . . . unless based upon the nature of the occupation.

*Id.* Also like Title VII, the ICRA provides an exemption to religious organizations discriminating on religious grounds in employment. The statute provides in pertinent part:

> 6. This section shall not apply to:
>    d. Any bona fide religious institution or its educational facility, association, corporation, or society with respect to any qualifications for employment based on religion . . . when such qualification[ is] related to a bona fide religious purpose.

Iowa Code section 216.6(6)(d).

Newbrough argues that the ICRA exemption is not applicable to his case. Specifically, Newbrough argues that:

> The exception permits religious discrimination only "with respect to a qualification for employment based on religion," and then only "when such qualification [is] related to a bona fide religious purpose.["] Here, the Defendants have not alleged that Newbrough's position was subject to a "qualification based on religion." Indeed, the undisputed evidence shows the opposite — the Defendants have consistently claimed that there is no requirement that employees in administrative positions, like Newbrough's former position, be Catholic. . . .

> Thus, the Iowa Civil Rights Act's religious employer
> exception has no relevance here, and has no effect on
> Newbrough's ICRA claim for religious discrimination.

Newbrough's Brief in Support of Plaintiff's Motion for Partial Summary Judgment and Resistance to Defendant's Motion for Summary Judgment (docket number 25-1) at 7. Defendants respond that "without waiving their defense under section 216.6[(6)](d), defendants urge that this motion for summary judgment can and should be decided in their favor even if the exemption does not apply."[16] Neither party cites to any case law interpreting Code section 216.6(6)(d), and the Court has found no Iowa case law interpreting this provision.

In *Saeemodarae*, the district court was presented with the identical situation, and even though "neither party raised the possibility in the briefing," the court declined to exercise supplemental jurisdiction over the state-law religious discrimination claim, where the court determined that defendants were entitled to summary judgment on the plaintiff's federal-law claims, over which the court had original jurisdiction. 456 F. Supp. 2d at 1042.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where the district court has dismissed all claims over which it has original jurisdiction. *Mountain Home Flight Service, Inc. v. Baxter County, Arkansas*, 758 F.3d 1038, 1045 (8th Cir. 2014). In *Mountain Home*, the Eighth Circuit determined that after all of the federal claims in the case were dismissed "the district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims." *Id.* While the determination of whether to dismiss state-law claims pursuant to

---

[16] Defendants' Brief in Support of Motion for Summary Judgment (docket number 17-5) at 6-7.

§ 1367(c)(3) is a matter of discretion for a district court, "'[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *Saeemodarae*, 456 F. Supp. 2d at 1042 (same).

In *Saeemodarae*, the district court found that comity "strongly" suggested declining supplemental jurisdiction over the plaintiff's state-law religious discrimination claim. 456 F. Supp. 2d at 1042. The court explained:

> First, the language of the ICRA exemption is different, perhaps in material ways, from the Title VII exemption. The Iowa Supreme Court has repeatedly noted that "because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it." *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) (citing *Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003)). However, where, as here, the provisions of the state and federal statutes have potentially materially different language, courts should be reluctant to assume that the exemption provision of the ICRA was "modeled after" the comparable exemption provision of Title VII, and the courts should, therefore, be decidedly reluctant to look to the federal law interpreting the federal provision for guidance in interpreting the state provision. Second, except where other factors weigh strongly in favor of exercising supplemental jurisdiction, the court believes that interpretation of a state statute as a matter of first impression should be left to the state courts. Indeed, 28 U.S.C. § 1367(c)(1) provides, independently, that the district courts may decline to exercise supplemental jurisdiction over a claim under § 1367(a), if "the claim raises novel or complex issues of State law."

*Id.* at 1042-43. The district court also found that fairness dictated declining supplemental jurisdiction over the plaintiff's remaining state-law religious discrimination claim. Because the viability of the plaintiff's state law claim and the defendant's exemption to those claims depended upon the interpretation of an Iowa statute, "it is clearly more fair to the parties for the Iowa appellate courts, which have the ultimate say on interpretation of Iowa law, to have the first say." *Id.* at 1043. Lastly, the district court determined that both judicial economy and convenience of the parties warranted declining the exercise of supplemental jurisdiction over the remaining state law claims. "Both parties are in Iowa and have access to Iowa courts, and it is more economical for the courts charged with interpreting Iowa law to pass on issues of first impression under Iowa law in the first instance." *Id.*

The Court finds the situation and reasoning in *Saeemodarae* equally applicable in this case. The Court has dismissed all of Newbrough's federal claims. The parties offer little discussion of the ICRA's "bona fide religious institution" exemption. Without citation to any case law, Newbrough states that the exemption is not applicable. Defendants believe that the exemption is applicable, and do not want to "waive" the exemption as a defense. Defendants implicitly acknowledge that there is no Iowa case law interpreting the exemption. Therefore, in the alternative, Defendants spend the bulk of their brief, approximately 38 pages, arguing that under federal Title VII law, Newbrough's state religious discrimination claim should be dismissed on summary judgment. Like the district court in *Saeemodarae*, even though neither party specifically raises the jurisdictional issue in their briefing, the Court finds that for the same reasons outlined in *Saeemodarae*, comity, fairness, judicial economy, and convenience dictate that the Court decline supplemental jurisdiction. 456 F. Supp at 1042-43. Specifically, because the Court has determined that Defendants are entitled to summary judgment on all of the federal claims over which the Court has original jurisdiction, the Court declines supplemental jurisdiction over Newbrough's remaining state religious discrimination claim.

29

*See* 28 U.S.C. § 1367(c)(3); *Mountain Home*, 758 F.3d at 1045; *Barstad*, 420 F.3d at 888; *Saeemodarae*, 456 F. Supp. 2d at 1042-43. The Court believes that the Iowa courts should be allowed to address the "bona fide religious institution" exemption, an issue of first impression, and address Newbrough's remaining religious discrimination claim under the ICRA.

## VI. CONCLUSION

The Court concludes that Defendants are entitled to summary judgment on both Newbrough's federal and state age discrimination claims. Defendants are also entitled to summary judgment on Newbrough's federal retaliation claim. Additionally, Defendants are entitled to summary judgment on Newbrough's federal religious discrimination claim because they are exempt from such a claim under 42 U.S.C. § 2000e-1(a). Finally, the Court declines to exercise supplemental jurisdiction over Newbrough's remaining state religious discrimination claim.

## VII. ORDER

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1.      The Motion for Summary Judgment (docket number 17) filed by Defendants on September 16, 2014, is hereby **GRANTED** as to Counts I, III, IV, and V in Plaintiff's Complaint. Those Counts are all **DISMISSED**.

2.      The Motion for Partial Summary Judgment (docket number 38) filed by Plaintiff on January 20, 2015, is hereby **DENIED** as to Counts I, III, IV, and V in Plaintiff's Complaint.

3.      Pursuant to 28 U.S.C. § 1367(c), the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim of religious

discrimination in violation of the ICRA, Count II of Plaintiff's Complaint. That Count is hereby **DISMISSED** without prejudice.

4.      This case is **CLOSED**.

DATED this  23rd  day of February, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA